**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

GRANT A.G.,
     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
     Defendant.

Case No. 1:20-cv-01209-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 14) and the Defendant's Motion for Summary Affirmance (Doc. 16). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Grant A.G. filed an application for disability insurance benefits (DIB) on June 26, 2017, alleging disability beginning on February 19, 2013. His DIB application was denied on October 10, 2017 and upon reconsideration on January 4, 2018. Grant filed a request for hearing concerning his DIB application which was held on January 29, 2019 before the Honorable Kathleen Winter (ALJ). At the hearing, Grant was represented by an attorney, and Grant and a vocational expert (VE) testified. Following the hearing, Grant's claim was denied on April 9, 2019.

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 9) on the docket.

His request for review by the Appeals Council was denied on April 10, 2020, making the ALJ's Decision the final decision of the Commissioner. Grant timely filed the instant civil action seeking review of the ALJ's Decision on June 1, 2020.

## II

At the January 2019 hearing, Grant was 47 years old and lived alone in a house. He had an associate's degree, previously worked mostly as a welder, and served in the military from 1990 to 2005. In February 2013, Grant was involved in a workplace accident when he was hit by equipment to the back of his head, and medical records thereafter provided the accident resulted in a traumatic brain injury (TBI). Grant testified that he last had a driver's license in 2014, but his neurologist "was the one that yanked it[.]" AR 62. When asked what kept him from being able to perform any type of work activities between February 2013 (his alleged onset date) and December 2017 (his date last insured), Grant answered the VE: "Well, . . . the transportation to work and the memory and a lot of it was, you know, just the short-term memory and that, of course, impaired me to drive to work and impaired me to – for the actual work itself. Of course, the standing and the neck pain . . . ." AR 64. Grant also testified that he believed the therapy he attended weekly was working for him.

He emphasized to the ALJ the "cognitive part" of his health issues and that he had discussed with his doctors what felt like seizures to him, at which times he had no recollection of what he had just done or how he had gotten to a certain place. AR 70. Upon questioning by his attorney, Grant testified he could not remember to take his medications without the assistance of iPhone reminders.

The VE then testified. The ALJ asked the VE to assume:

a hypothetical individual of the claimant's age, education and with the [Grant's past work as an infantry unit leader, welder, and farm worker]. Further assume this individual can perform work at the light exertional level, can never climb ladders, ropes or scaffolds; not even

2

moderate exposure to moving machinery or unprotected heights; with work that can be learned in 30 days or less; with simple, routine tasks; simple work related decisions; routine work place changes; able to remain on task in two-hour increments; and occasional interaction with coworkers, supervisors and the general public[.]

AR 74-75. The VE answered that hypothetical individual could not perform Grant's past work. The VE identified the following jobs such a hypothetical individual could perform: maids and housekeeping cleaners; hand packaging; and production related area jobs in manufacturing such as "assembler, production." AR 75-76. If that same hypothetical individual was further restricted to work with an option to sit or stand changing positions no more frequently than every 30 minutes while remaining on task, the VE testified there would still be jobs available in "similar work areas of a non-machine related productions jobs [sic] in manufacturing[.]" AR 76. The VE also testified that workplace tolerance for off task behavior was for no more than 20% of the workday off task, and tolerance for absence was for no more than two days per month. Finally, the VE stated that "assuming that [the individual's brain just went blank for a half an hour or 20 minutes of the individual's work time such that his productivity was reduced to below acceptable levels,] the person would lose" employment. AR 79.

### III

At Step Two of the disability analysis, the ALJ determined Grant had the following severe impairments: degenerative disc disease of the cervical spine; neurocognitive disorder; depression; and post-traumatic stress disorder (PTSD). AR 130. At Step Three, the ALJ determined Grant had moderate limitation in all four of the following broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and the ability to adapt or manage himself. The ALJ found moderate limitations based on evidence including: Grant's hearing testimony

(maintained relationships and relied on family members to take him places); his report of functioning in his form Function Report – Adult (difficulty following instructions and completing tasks); consultative examination results (memory abilities in the "low average" range but memory deficit described as "mild" and average recent memory but poor long-term memory); memory testing; medical records (some issues with concentration noted but demonstrated proficiency with mathematical calculations); and objective evidence of, for example, his observed appropriate grooming and hygiene.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; not even moderate exposure to moving machinery or unprotected heights. Work with an option to sit or stand, changing positions no more frequently than every 30 minutes while remaining on task. With work that can be learned in 30 days or less; simple routine tasks; simple work-related decisions; routine workplace changes; able to remain on-task in two-hour increments; and occasional interaction with coworkers, supervisors, and the general public.

AR 132. In support of her RFC finding, the ALJ again considered Grant's hearing testimony and other statements in the record. The ALJ noted with regard to Grant's reported high pain levels that Grant stated in August 2014 that he sustained an injury after throwing a football, that he admitted in June 2017 he went fishing "at least twice a week," and that he reported in August 2017 his worst pain occurred after driving "a lot" and "doing some kind of work." AR 133 (citing record evidence).

With regard to Grant's mental impairments, the ALJ discussed the psychological findings she found persuasive that were made by a State Agency doctor including the doctor's opinion that Grant was moderately impaired in his

ability to understand, remember, or apply information. That State Agency doctor provided the additional explanation that, "Overall, from a psychological perspective, the [claimant] retains the ability to perform simple repetitive tasks on a sustained basis in a work setting with occasional contact with others and routine work place changes." AR 97. The ALJ detailed that she was unpersuaded by a consultative examiner's September 2017 opinion that Grant had a number of cognitive deficits that "greatly impact his functioning," and pointed to evidence such as Grant's testimony that he engaged in "a great number of activities of daily living inconsistent with" the examiner's opinion including the fact that he resided independently. AR 135.

The ALJ articulated that Grant's moderate limitation in understanding, remembering, or applying information was "accommodated by the finding that [he] should only be allowed work that can be learned in 30 days or less." AR 136. She articulated Grant's moderate limitation in interacting with others was accommodated by "the finding that [Grant] should only have occasional interaction with coworkers, supervisors, and the general public." *Id*. His moderate limitation in concentrating, persisting, or maintaining pace was accommodated by "the finding that [he] can only remain on task in two-hour increments." *Id*. Finally, Grant's moderate limitation in his ability to adapt or manage himself was accommodated by "the finding that the claimant can only be exposed to routing workplace changes." *Id*.

### IV

Grant argues: 1) the ALJ failed to consider the treating physician opinions and did not offer reasons for discounting them; and 2) the ALJ's opinion is not based upon substantial evidence.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v.*

*Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)    currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)      suffers from an impairment that is severe and meets a
        durational requirement, or suffers from a combination of
        impairments that is severe and meets the durational
        requirement;

3)      suffers from an impairment which meets or equals any
        impairment listed in the appendix and which meets the
        duration requirement;

4)      is unable to perform her past relevant work which includes an
        assessment of the claimant's residual functional capacity; and

5)      is unable to perform any other work existing in significant
        numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Grant claims error on the ALJ's part at Step Four.

### A

Grant first points out that the ALJ did not list by name three treating professionals' names – Lisa Watt, Ph.D. (performed neuropsychological testing on Grant), Glen Feather, D.O. (treating doctor), Maria M. Karbowska-Jankowska, M.D. (neurologist specializing in TBI) – each of whom based their primary diagnosis of Grant's condition as being a traumatic brain injury which caused him significant cognitive and physical deficits. He argues the ALJ took the easy way out in discounting their opinions by relying on "magic words" contained in those

opinions. He contends that the ALJ provided no analysis of the specific reasons those professionals gave in support of their conclusions. The Commissioner argues that none of those three doctors included an opinion about functional limitations, and even if the ALJ should have discussed Dr. Karbowksa-Jankowska's statements in greater detail, any error was harmless.

Initially, the Court notes that Grant incorrectly referred to the treating physician rule that is contained within 20 C.F.R. § 404.1527. However, Grant filed his DIB application on June 26, 2017[2], and so 20 C.F.R. § 404.1520c applied to his claim. Section 404.1520c provides that the Social Security Administration no longer defers to or gives controlling weight to any medical opinions, including from a claimant's medical sources. 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to consider the persuasiveness of medical opinions using several factors, though the most important factors are supportability and consistency. *Id*.

The ALJ properly rejected Dr. Watt's, Dr. Feather's, and Dr. Karbowksa-Jankowska's statements in the record that Grant was "unable to work," was to be "off work until further notice," was "unable to return to gainful employment," and "remains totally disabled for any occupation." AR 521, AR 594, AR 632, AR 635, AR 767, AR 775, AR 781, AR 784, AR 787. 20 C.F.R. § 404.1520b(c) provides that the Social Security Administration (SSA) will not provide any analysis about how evidence such as statements that a claimant is disabled or is not able to work were considered because those statements "would direct our determination or decision that [a claimant is or is not] disabled . . . within the meaning of the Act, but we are

---

[2] The treating physician rule applied to claims filed *before* March 27, 2017.

responsible for making the determination or decision about whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(3).[3]

It bears repeating that the regulation applicable to Grant's DIB application does not contain the treating physician rule, so Grant's emphasis on the fact that none of those three *treating* doctors' names were included in the Decision is not as significant as he suggests. Also, a "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in abilities including the ability to perform physical demands of work activities and the ability to perform mental demands of work activities, such as understanding, remembering, maintaining concentration, carrying out instructions, or responding appropriately to work pressures in a work setting. 20 C.F.R. § 404.1513(a)(2)(i)-(ii). Much of the three doctors' "findings and opinions" Grant highlights in his brief are statements on issues reserved to the Commissioner or simply statements of diagnoses/his medical conditions; the statements are not about Grant's impairment-related limitations or restrictions in his abilities. As for Dr. Karbowska-Jankowska's July 2016 deposition testimony, however, certain of her statements that Grant highlighted in his brief were those of Grant's impairment-related restrictions and limitations in his abilities. She opined he could not make fast decisions about dangerous situations in the workplace where he may injure himself or cause injury to somebody else, and she opined "on the other hand, if

---

[3] The ALJ, like the parties, incorrectly cited 20 C.F.R. § 404.1527 in her Decision when rejecting statements that Grant was unable to work. However, that error was harmless. She elsewhere correctly cited 20 C.F.R. § 404.1520c, and that she had considered the medical opinions and prior administrative medical findings in accordance with the requirements of that regulation. Moreover, 20 C.F.R. § 404.1520b (effective March 27, 2017), like Section 404.1527(d), provides that statements on issues reserved to the Commissioner such as statements that a claimant is disabled or not able to work are inherently neither valuable nor persuasive. 20 C.F.R. § 404.1520b(c)(3); *compare* 20 C.F.R. § 404.1527(d) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . .").

he's to work with some mental capacity, he won't be able to do any multitasking or concentrate on the task to perform." AR 314-15. However, as the Commissioner argues, the ALJ's error in explicitly considering that deposition testimony in her Decision was harmless error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result).

The ALJ discussed the persuasiveness of opinions provided by two State Agency M.D.s, two State Agency Psy.D.s, a psychological consultative examiner (Mikell R. McCray, Psy.D.) in March 2015, and a mental status consultative examiner (Amy S. Louck Davis, Psy.D.) in September 2017, and the ALJ cited record evidence in support of her assessment of those opinions. Grant does not challenge the ALJ's consideration of those six opinions, and so he has waived any such argument. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court can easily trace the path of reasoning between the record evidence and the ALJ's conclusions as to the persuasiveness of those medical sources' opinions and therefore between the record evidence and her conclusions as to Grant's RFC. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (stating that an ALJ "must adequately articulate [his] analysis so that [a reviewing court] can follow [his] reasoning"). For example, the ALJ found State Agency Dr. Charles Kenney's opinion as to Grant's physical abilities that Grant should be restricted to work at the light exertional level partially persuasive because it was supported by Dr. Kenney's examination of evidence, and Dr. Kenney's opinion was consistent with other evidence showing Grant suffered from certain cervical spine issues but not other cervical spine deficiencies. The ALJ found State Agency Dr. Ellen Rozenfeld's opinion as to Grant's psychological abilities persuasive because it was supported by her review of Grant's medical records, and her opinion was

consistent with other evidence she did not review, including that Grant was noted to have average recent memory but poor long-term memory. The ALJ was unpersuaded by consultative examiner Dr. Louck Davis's statement that Grant's psychological issues "greatly impact his functioning" because Dr. Louck Davis failed to assign specific limitations on Grant's functioning, and her opinion was inconsistent with such evidence that Grant was able to provide information about his health, describe his prior work history, and perform a "great number" of activities of daily living. AR 135. The ALJ also detailed Dr. Louck Davis's examination findings and observed her opinions were unsupported by her own findings including that Grant was fully oriented and had average recent memory. The ALJ was only partially persuaded by consultative examiner Dr. McCray's opinions as he failed to assign specific limitations on Grant's functioning, but his opinion of mild memory deficits was supported by Grant's longitudinal record of memory testing scores. Notably, the State Agency doctors reviewed Dr. Watt's neuropsychological test results as well as Dr. Karbowska-Jankowska's treatment notes.

Also, the ALJ explicitly discussed the information and findings Dr. Watt included in her April 2014 and August 2015 neuropsychological testing including Grant's severe impairment in delayed recognition abilities, his mild to moderate cognitive deficits, and his improvement in cognition with persisting significant deficits. Those results were included in Dr. Karbowska-Jankowska's treatment notes wherein she opined Grant should be off work until further notice and he remained totally disabled for any occupation. Dr. Feather stated he agreed "with the assessment that [Grant] is probably unable to return to the workforce given his testing." AR 479. In other words, the ALJ did not entirely disregard the three treating doctors' records without analysis by merely relying on the "magic words" of "unable to work" and "disabled" contained within those records.

11

Lastly, with regard to Dr. Karbowska-Jankowska's deposition testimony, the ALJ was not required to discuss every piece of evidence in the record. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion"). The ALJ cited and discussed substantial evidence in support of her finding that Grant was not as functionally limited as alleged, and, in doing so, she made obvious why she incorporated the limitations she did in the RFC which were not those Dr. Karbowska-Jankowska opined to at her deposition. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

## B

Next, Grant argues that while the material facts in this case all point to one primary injury – a traumatic brain injury with significant cognitive defects – the ALJ's Decision pulled together weak, often misconstrued examples to attempt to rebut the dominant injury. The Commissioner argues that the medical evidence of record and Grant's own statements in the record that the ALJ discussed in her Decision supported the ALJ's RFC determination. The Commissioner says Grant now quibbles over the particulars of his hearing testimony, but the ALJ reasonably considered his statements and the record ultimately did not support Grant's allegations about the severity of his symptoms.

Grant faults the ALJ for failing to elaborate upon her findings that he could, among other things, prepare meals, pay bills, shop, and play games. He says his Function Report – Adult statements revealed he suffered from greater deficits than the ALJ conveyed in her Decision. Had the ALJ relied only upon Grant's daily activities to reject the extent of limitation he alleged was caused by his severe impairments, remand would be warranted. But that is not what the ALJ did. The

Commissioner correctly relies upon 20 C.F.R. § 404.1529(c) in support of her argument that the ALJ's RFC assessment was reasonable and proper. Section 404.1529(c) provides that an ALJ must evaluate the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c). Both the objective medical evidence and the following evidence are to be considered: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c)(2), (3).

Here, the ALJ relied upon Grant's reported activities of daily living *and*: his mild and average examination findings; his demonstrated proficiency with mathematical calculations; his observed appropriate grooming and hygiene and ability to get along well with providers and staff; his management of psychiatric conditions with psychology and psychiatry; and his statements that he was "pleased" at his response to prescribed psychiatric medication. The ALJ also considered that the two consultative examiners described Grant's neurocognitive disorder as "mild," and she found persuasive State Agency doctors' opinions that Grant was not precluded from performing certain work. While the ALJ did not include the details of how Grant prepared meals (sandwiches, frozen dinners), shopped (once a month to get food), or played games (word search to help his brain), the ALJ detailed the entirety of evidence – beyond Grant's daily activities - she relied upon in reaching her mental RFC finding. There is no indication that the ALJ placed an undue emphasis upon Grant's daily activities given that she discussed an array of evidence which, she concluded, demonstrated Grant was not as limited as he represented. *See Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir.

2013) (unpublished opinion) (explaining the ALJ's adverse credibility finding was not patently wrong where the ALJ did not place "undue weight" on the claimant's activities of daily living and "specified several reasons for finding [the claimant] not credible"). Also, evidence in the record which Grant says was not contextually useful or accurate because on standard electronic medical record forms was nevertheless proper for the ALJ to consider; those forms included Grant's conduct as observed and noted by medical professionals.[4] As with her consideration of the medical opinions of record, the ALJ supported her mental RFC finding with substantial evidence. The way in which Grant presented the foregoing and additional evidence of record amounts to an invitation to reweigh the evidence. The Court cannot do so. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

Finally, Grant argues that the ALJ had to dance around all of Grant's other issues to create a job that he could do that even the VE would not agree was really possible. Grant points to the VE's testimony that a person off task more frequently than 20% of the workday, a person consistently absent more frequently than two days a month, or a person who could lose a half hour or 20 minutes of his work time because his brain just went blank would not be employable. The Commissioner counters that those alternative hypothetical questions the ALJ posed to the VE are not evidence in support of those limitations, and simply because the ALJ asks about a potential limitation does not mean that the ALJ thinks that the claimant has that limitation or believes the evidence supports such a

---

[4] Grant takes issue with the ALJ's reliance upon notations that he "demonstrates understanding of the care plan and materials discussed" and he was "pleasant and cooperative." AR 131 (citing, among other records, AR 632, AR 477, and AR 707).

limitation. The Court agrees with each point the Commissioner makes in her brief in this regard.

First of all, for the reasons already discussed, the ALJ's mental RFC finding is supported by substantial evidence and Grant made no developed arguments as to the physical RFC finding. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("Both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record"). Second, Grant cites to no authority in support of his position that a VE's testimony as to alternate hypotheticals including limitations an ALJ ultimately does not find supported by the record is evidence. *See Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 948 (N.D. Ind. 2012) (rejecting the claimant's contention that the ALJ erred by not including in her decision the hypothetical the claimant said was favorable evidence as the ALJ was only required to pose a hypothetical question that contained all of the limitations the ALJ accepted as true). In fact, HALLEX I-2-5-48 provides that the "VE's opinion is not binding on the ALJ. The ALJ must weigh a VE's opinion along with all other evidence.[5] The ALJ committed no error by omitting from her Decision the alternative hypotheticals addressing off task behavior and absenteeism. *See Wiszowaty*, 861 F. Supp. 2d at 948 (pointing out that the claimant cited "no law requiring an ALJ to discuss [VE] testimony regarding a hypothetical containing limitations not adopted by the ALJ").

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 14) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 16) be granted; 3) The Clerk of Court be directed to

---

[5] The Court recognizes that the Seventh Circuit Court of Appeals has observed that the Hearings, Appeals, and Litigation Law Manual's (HALLEX) provisions "are not binding law independent of the governing statutes and regulations." *Gebauer v. Saul*, 801 F. App'x 404, 408 n.1 (7th Cir. 2020) (unpublished opinion).

enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Grant A.G., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on October 19, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE