UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

GRANT A. G., )
 )
       Plaintiff, )
 )
v. ) Case No. 20-cv-1209-JES-JEH
 )
COMM'R OF SOCIAL SECURITY, )
 )
       Defendant. )

## ORDER AND OPINION

This matter is now before the Court on a Report and Recommendation (Doc. 17) from Magistrate Judge Hawley recommending Plaintiff's Motion (Doc. 14) for Summary Judgment be denied and Defendant's Motion (Doc. 16) for Summary Affirmance be granted. Plaintiff has filed an Objection (Doc. 18) and Defendant has Responded (Doc. 19). For the reasons set forth below, the Court adopts the Report and Recommendation (Doc. 17), denies Plaintiff's Motion (Doc. 14), and grants Defendant's Motion (Doc. 16).

### BACKGROUND

The facts of this case have been sufficiently detailed in the Magistrate Judge's Report and Recommendation (Doc. 17), which the Court now adopts. The Court thus recounts the facts here in summary fashion.[1] Additional facts will be incorporated as necessary in the Discussion section. On June 26, 2017, Grant A.G. filed an application for disability insurance benefits (DIB), alleging disability which began on February 19, 2013. Claimant's DIB application was denied on October 10, 2017, and the motion for reconsideration was denied on January 4, 2018. Claimant filed a request for a hearing, and on January 29, 2019, the matter was heard before the

---

[1] Consistent with the Magistrate Judge's Report and Recommendation (Doc. 14), references to the pages with the Administrative Record (Doc. 9) will be identified by "AR [page number]."

1

Honorable Kathleen Winter (ALJ). At the hearing, Claimant was represented by an attorney, with Claimant, and Vocational Expert (VE), Dennis W. Gustafson testifying. On April 9, 2019, ALJ Winter issued an unfavorable decision. (AR 124–143). Claimant's subsequent request for review was denied by the Appeals Council on April 10, 2020, making the ALJ's Decision the final decision of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

On February 19, 2013, Plaintiff was working as a welder when a piece of equipment weighing approximately 9,000 pounds broke loose and hit the back of his head, rendering him unconscious for about 5 minutes. Plaintiff was subsequently diagnosed with post-concussive syndrome, inability to concentrate, headaches, cervicalgia, and episodes of spacing out for 30 seconds to several minutes three to four times a week. (AR 44). At the hearing, Plaintiff testified that he was unable to work due to lack of transportation, short-term memory issues, neck pain, and difficulty standing. In 2014, Plaintiff's neurologist de-authorized his driver's license due to the head injury.

In addition to hearing testimony of Plaintiff and the Vocational Expert, the ALJ reviewed records from Charles Kenney, MD, Richard Bilinski, MD, Ellen Rosenfeld, Psy.D., Gayle Williamson, Psy.D, Amy S. Louck Davis, Psy.D., Mikell R. McCray, Psy.D., and Plaintiff's treating sources Glen Feather, D.O., Lisa Watt, Ph.D., and Plaintiff's neurologist, Maria M. Karbowska-Jankowska. Plaintiff also submitted Dr. Jankowska's deposition testimony taken pursuant to a related workers' compensation proceeding.

At the hearing, the ALJ posed a hypothetical to VE Gustafson, asking whether an individual of Plaintiff's age, with his education and prior work experience, could do any of the work he had done previously if restricted to the light exertional level with the following accommodations:

> never climb ladders, ropes or scaffolds; not even moderate exposure to moving machinery or unprotected heights; with work that can be learned in 30 days or less; with simple, routine tasks; simple work-related decisions; routine workplace changes; able to remain on task in two-hour increment; and occasional interaction with coworkers, supervisors, and the general public[.]

VE Gustafson responded that such an individual could not return to the work Plaintiff had previously done but could do unskilled, SVP 2 manual work, such as cleaning and housekeeping. He also testified that the individual could perform a non-machine-related manufacturing job, such as hand packing, bottling line attendant and assembler. (AR 77–84).

When the ALJ added the additional restriction of having "an option to sit or stand changing positions no more frequently than every 30 minutes while remaining on task," the VE indicated that this would limit an individual to sedentary work. Such sedentary work would include inspection activities, production work, work as a stone setter, hand packaging, and ampoule sealer. The ALJ also inquired as to the workplace level of tolerance for being off-task. The VE responded that with factory productivity, an individual would have to be on-task essentially 80% of the time and an individual who was off task more frequently than 20% of the workday would be would likely be unemployable. He noted that the jobs he identified normally allowed for 10-minute breaks every two hours and that an individual who took more breaks than this would likely not maintain enough productivity to remain employed.

Plaintiff's counsel posed an additional question, asking whether an individual would remain employed if he "lost say a half an hour or 20 minutes of their work time because their brain sort of just when blank." The VE responded that such an individual would likely lose their job. He also testified that an individual who routinely took more than two sick days per month would likely not reach productivity levels and be unemployable. (AR 81–83).

The ALJ issued her Decision in April 2019, determining that Plaintiff was not disabled, as he had the Residual Functional Capacity ("RFC") for work at the light exertion level. RFC is a measure of an individual's ability to do physical and mental work activities on a sustained basis despite limitations from impairments. When making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 CFR § 404.1520(e) and 404.1545. The ALJ determined, consistent with the VE's opinion, that Plaintiff could work with the following restrictions:

- Never climb ladders, ropes, or scaffolds;
- Not even moderate exposure to moving machinery or unprotected heights;
- Option to sit or stand during work, changing positions no more frequently than every 30 minutes while remaining on task;
- Work could be learned in 30 days or less;
- Simple, routine tasks;
- Simple work-related decisions;
- Routine workplace changes;
- Able to remain on-task in two-hour increments; and
- Occasional interaction with coworkers, supervisors, and the public.

(AR 137).

## LEGAL STANDARD

Under 42 U.S.C. 405(g), the Court has authority to review the Appeals Council's decision, "though review is bound by a strict standard. The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable." *Inman v. Saul*, No. 20-231, 2021 WL 4079293 at *1 (N.D. Ind. Sept. 7, 2021) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir.

2008)). *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court may not replace the ALJ's judgment with its own by reconsidering facts or evidence or making credibility determinations. *Id.*; *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Inman*, 2021 WL 4079293 at *1 (citing *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014)).

## DISCUSSION

Plaintiff identifies two objections to the ALJ's denial of benefits; that the ALJ failed to give sufficient weight to the opinions of Drs. Watt, Feather, and Jankowska, and offer reasons for discounting them; and that the findings were not based on substantial evidence.

Dr. Watt, one of Plaintiff's treating sources, conducted a neuropsychological consult on April 28, 2014, and consult and testing on May 14, 2014. She determined that Plaintiff's abstract verbal reasoning was mildly impaired, basic focus attention was moderately impaired, mental arithmetic was mildly impaired, delayed recall was moderately impaired and delayed recognition was low average. Dr. Watt found that visual scanning; measured by speed of information processing and responding; learning for effective performance, and maintenance of mental set was severely impaired, as was new learning and recall of verbal information. She summarized that Plaintiff "demonstrates widespread low average to severe cognitive deficit." She also determined that the synergistic effect of Plaintiff's cognitive issues and PTSD rendered Plaintiff

5

currently unable to obtain cognitive employment. Dr. Watt noted, however, the Plaintiff's cognitive status might improve with treatment of his psychiatric illness. (AR 39–48) (AR 524).

Dr. Watt conducted a second neuropsychology evaluation on August 28, 2015, issuing her Report on September 4, 2015. (AR 538–532). She found that Plaintiff had shown some improvement, doing well in language and reading, including abstract verbal reading, but showed moderate to severe deficits in attention and processing speed and significant deficits for new learning and recall of verbal material. Dr. Watt determined that Plaintiff demonstrated "widespread low average to severe cognitive deficit." She noted again, that due to the synergistic effect of the cognitive and psychological conditions, Plaintiff was currently unable to maintain cognitive employment. She indicated, however, that Plaintiff's cognitive status might improve with effective treatment of his psychiatric illness.

In 2014, Plaintiff underwent treatment at the Illinois Regional Pain Institute by Dr. Glenn Feather. On February 20, 2014, Dr. Feather documented Plaintiff suffered from traumatic brain injury, posttraumatic brain syndrome, spondylosis, cervicalgia, myalgia, degeneration of cervical intervertebral disc and mononeuritis of the upper limbs. On May 30, 2014, Dr. Feather charted "I agree with the assessment that the patient is probably unable to return to the work force given his testing" and "I am going to place the patient at MMI and recommend permanent disability for the patient." (AR 483). On August 11, 2014, Mathew Maupin, a CRNA in Dr. Feather's office saw Plaintiff for right upper extremity pain, noting that Plaintiff "was very active over a week ago, throwing the football with his son. He now has right arm pain." A subsequent, September 15, 2014 note indicated that Plaintiff's right upper arm pain was aggravated by driving, prolonged keyboard activity and mowing. *See* (AR 476–505).

The record also contains the January 27, 2014 and July 12, 2016 treatment records of treating neurologist, Dr. Jankowska. On January 27, 2014, Dr. Jankowska diagnosed Plaintiff with traumatic brain injury, headache due to trauma, cervicalgia, and episodes where he stares into space. She noted that, due to the "staring spells," Plaintiff was not to drive until further notice. On July 12, 2016, Dr. Jankowski issued the recommendation that Plaintiff cease driving due to "residual cognitive deficit from head injury." (AR 49-52). Dr. Jankowski also noted that Dr. Watt's August 28, 2015 evaluation of Plaintiff showed cognitive improvement since the 2014 evaluation, but she did not believe Plaintiff would further improve three years after the injury. (AR 630).

Dr. Jankowska testified at deposition that Plaintiff "cannot make fast decisions about the dangerous situation at the workplace or any other place that he could injure himself or be--cause injury to somebody else in a work environment." (AR 318). Dr. Jankowska also opined, "if he is to work with some mental capacity, he will be unable to do any multi-tasking or concentrate on the task to perform." (AR 318–319). She characterized Plaintiff's condition as permanent, indicating that he would be disabled for any occupation due to residual cognitive difficulties. (AR 319). Plaintiff asserts that in this testimony, Dr. Jankowska identified functional limitations which were not credited by the ALJ.

On March 25, 2015, Dr. Mikell McCray undertook a psychological evaluation, describing Plaintiff as pleasant and polite. Dr. McCray found Plaintiff's speech and language production to be primarily within normal limits, although at times halted and awkward as he searched for the right word. (AR 509-515). Plaintiff tested low average in auditory memory, visual working memory, and delayed memory. He tested average in visual memory and immediate memory. Dr.

7

McCray described Plaintiff's memory deficits as "mild, falling primarily in the mid to lower Low Average range."

On September 8, 2017, Amy Louck Davis, Psy.D., conducted a Mental Status Evaluation of Plaintiff at the request of the Bureau of Disability Determination Services. Dr. Davis noted that Plaintiff's recent memory appeared average, while long term memory appeared poor. She also documented that Plaintiff's demonstrated proficiency with calculations but difficulty with working memory and concentration. She summarized Plaintiff as having a traumatic brain injury that had caused a number of "cognitive deficits that greatly impact his function." She did not provide any detail as to Plaintiff's functional limitations but indicated that Plaintiff presented as not competent to manage his own funds. (AR 882–884).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. If a claimant is able to do other work, he is not disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. If an ALJ finds that a claimant is not disabled and not able to return to his prior work, the ALJ must identify evidence that the claimant, given his RFC, age, education, and work experience, can perform other work which exists in significant numbers in the national economy. 20 CFR 404.1512 and 404.1560(c).

The ALJ is to apply a five-step analysis in determining an individual's eligibility for disability benefits. The following issues are to be decided in order:

(1) is the claimant currently employed? ;

(2) is the claimant's impairment or combination of impairments severe? ;

(3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling? ;

    (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation? ;

    (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience?

The claimant bears the burden of proof until step five when it shifts to the Commissioner to prove the claimant can perform work in the economy. *Inman*, 2021 WL 4079293 at *2 (citing § 404.1520) (internal citations omitted). If the ALJ finds even one severe impairment at step 2, she is obligated to move on to the remaining steps and consider "the entire constellation of ailments." *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663 at *2 (7th Cir. Feb. 8, 2022) (citing *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010)).

    The parties do not dispute that Plaintiff is unable to return to his former employment. The controversy here arises from step 5 of the ALJ's analysis, with Plaintiff claiming that he is unable to perform other work in the national economy as supported by the opinions of his treating sources Drs. Watt, Feather, and Jankowska.

    **Treating Physicians' Opinions**

    Plaintiff asserts that the ALJ failed to duly consider the opinions of Drs. Watt, Feathers, and Jankowska; did not mention any of the three by name in the Decision; and provided no analysis as to her reasons for not finding their opinions persuasive. It is clear the ALJ made some review of the three providers' records as she found that they had improperly offered opinions as to Plaintiff's disability, an area properly "reserved to the Commissioner." *See Irwin v. Berryhill*, No. 17-00408, 2018 WL 5873877 at *4 (N.D. Ind. Nov. 8, 2018) ("Although an ALJ may decide to adopt the opinions in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ.") The ALJ

also found that the three had not provided sufficient information as to Plaintiff's functional limitations.

In the motion for summary judgment, Plaintiff asserts that the opinions of his treating sources were not given adequate consideration, incorrectly citing the treating physician rule at 20 C.F.R. § 404.1527. Under this rule, treating physicians' opinions are entitled to controlling weight unless unsupported in the record. Defendant responded, citing this rule as well. As the Magistrate Judge noted in his Report and Recommendation, the treating physician rule does not apply here as it is only relevant to claims filed before March 27, 2017. The controlling regulation here is 20 C.F.R. § 404.1520c(a), which provides that the Social Security Administration is no longer to defer or give controlling weight to any medical opinion offered in support of a claim. "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."

Plaintiff concedes this but asserts that the treating physicians' opinions are still to be given heightened consideration, citing the relevant factors listed at § 404.1520c(1) – (5):

1. Supportability;

2. Consistency;

3. Relationship with the Claimant including the length of the treatment relationship, the purpose of the treatment relationship, the extent of the treatment relationship, the examining relationship;

4. Specialization; and

5. Other Factors.

It is Plaintiff's position that, although the opinions of Drs. Watts, Feather, and Jankowska do not have controlling weight, they are persuasive due to the treating providers' relationship with Plaintiff.

While the ALJ is to consider the medical opinions and prior administrative medical findings under the § 404.1520c(1) – (5) factors, "she need only explain how she considered supportability and consistency." *Mazza v. Saul*, No. 19-1724, 2020 WL 6909308 at *5 (E.D. Wis. Nov. 24, 2020). *See Inman*, 2021 WL 4079293 at *2 (ALJ's failure to explicitly discuss supportability and consistency requires remand).

Under the supportability requirement, a provider's records must offer objective medical evidence and explanation to support the opinion being offered. *Inman*, 2021 WL 4079293 at *2, citing 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). The more support for the opinion, the more persuasive it will be. Under the consistency requirement, "a provider's opinion … must be, reductively, consistent with the record. *Id*. The more the medical opinion is consistent with evidence from other medical and nonmedical sources, the more persuasive it will be. *Id.* at *2.

As previously noted, Drs. Watt, Feather, and Jankowska are not permitted to usurp the role of the ALJ by offering opinions that Plaintiff is "disabled." As a result, the Court will examine only the ALJ's finding that the three treating sources failed to identify any functional limitations of Plaintiff. As to Dr. Watt, a review of her records confirms the ALJ's finding that Dr. Watt she did not offer medical opinions as to any particular tasks which Plaintiff could or could not do. As Dr. Watt did not provide an opinion as to Plaintiff's functional limitations, the ALJ was not required to discuss it in her Decision.

The Court, similarly, finds no error in the ALJ's failure to specifically refer to the opinions of Dr. Feather. It is clear that the ALJ reviewed this opinion as she discredited Dr.

Feather's opinion that Plaintiff was disabled. She also found that Dr. Feather had failed to identify Plaintiff's functional limitations. This is borne out by the record as, while Dr. Feather provided detailed information as to Plaintiff's various diagnoses and symptoms, he provided no information as to Plaintiff's functional limitations.

There is another deficiency in Dr. Feather's opinion as he only saw Plaintiff in 2014, prior to Dr. Watt's August 2015 follow-up testing which documented an improvement in Plaintiff's condition, as noted by Dr. Jankowska. Dr. Feather's May 2014 finding that Plaintiff had reached maximum medical improvement is not consistent with Drs. Watt's and Jankowska's opinions that Plaintiff showed improvement in 2015; or consistent with the opinions of the other reviewing professionals.

The Court finds differently as to the opinions of Dr. Jankowska as, while the ALJ determined that Dr. Jankowska had not offered an opinion as to Plaintiff's functional limitations, she had testified as to this in her July 2016 deposition, as the Magistrate Judge noted in his Report and Recommendation. Dr. Jankowska had testified that Plaintiff would not be able to make fast decisions about dangerous situations in the workplace; and, if working in some mental capacity, would be unable to multitask and still concentrate on the matter at hand.

The Magistrate Judge determined that, while the ALJ did not discuss these functional limitations, this was merely harmless error. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (the ALJ was not required to discuss every piece of evidence in the case). The ALJ was only required to "build a logical bridge from evidence to conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), as amended (Dec. 13, 2000).

Even if the ALJ had more squarely addressed Dr. Jankowska's opinions as to Plaintiff's functional limitation, it would not have changed the outcome. Dr. Jankowska testified that

Plaintiff was not able to make fast decisions about dangerous situations in the workplace; and, if working in some mental capacity, would be unable to multitask and still concentrate on the matter at hand. The ALJ's RFC finding are consistent with this as she included the limitations that Plaintiff "[n]ever climb ladders, ropes, or scaffolds; not have "even moderate exposure to moving machinery or unprotected heights"; only engage in "[s]imple, routine tasks; [s]imple work-related decisions"; and "[r]outine workplace changes." In addition, the ALJ found persuasive, Dr. Rozenfeld's opinion that Plaintiff's "ability to be aware of normal hazards and take appropriate precautions," was "[n]ot significantly limited." (AR 101).

The Court agrees with the Magistrate Judge that the ALJ's failure to recite Dr. Jankowska's opinion as to Plaintiff's functional limitations is only harmless error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). *See Schomas*, 732 F.3d at 707–08 (7th Cir. 2013) ("even though the ALJ should have better articulated his reasoning, we cannot see how a different conclusion possibly could be reached on remand.").

    S<small>UBSTANTIAL</small> E<small>VIDENCE</small>

Plaintiff also makes the general claim that the ALJ's Decision is not supported by substantial evidence. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). It is not the job of the Court to reweigh the evidence, but rather to determine whether there is substantial evidence to support the ALJ's findings. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). On the other hand, while the Court is to afford great deference to the ALJ's determinations, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

In determining Plaintiff's RFC, the ALJ permissibly relied on the VE's opinion that a hypothetical individual with Plaintiff's limitations could safely work in jobs available in the national economy subject to the restrictions the ALJ had identified. *See Biestek*, 139 S. Ct. at 1155 (a vocational expert's testimony can constitute substantial evidence to support an ALJ's finding of job availability at § 404.1520c(5)).

The ALJ further noted that Plaintiff's neurocognitive disorder was described as mild by Dr. McCray in March 2015; and that on December 18, 2017, Dr. Williamson opined that Plaintiff was able to "remember and concentrate sufficiently in order to carry out 1-2 step instructions/tasks and to sustain efforts for a normal work period." (AR 123). The ALJ found partially persuasive Dr. Kenney's opinion that Plaintiff could do work at the light exertional level, as she found that this was largely supported by Dr. Kenney's records and consistent with the other evidence. The ALJ also found partially persuasive Dr. Bilinski's December 26, 2017 findings that Plaintiff could, with normal breaks, stand or walk about 6 hours in an 8-hour workday (AR 120-121).

The ALJ also reviewed Dr. Davis's September 8, 2017 Mental Status Evaluation and findings that Plaintiff's recent memory appeared average, while long term memory appeared poor. Dr. Davis had also documented that Plaintiff demonstrated proficiency with calculations but difficulty with working memory and concentration. Dr. Davis opined that Plaintiff had a number of "cognitive deficits that greatly impact his function," something which the ALJ did not find persuasive. (AR 882–884).

As previously noted, the ALJ found persuasive Dr. Rozenfeld's opinions that Plaintiff would be aware of normal workplace hazard. She also found persuasive, Dr. Rozenfeld's opinion that Plaintiff was only moderately impaired in his ability to understand, remember, or apply information; finding this opinion supported by Dr. Rozenfeld's records, and consistent with Dr. Watt's September 4, 2015 evaluation documenting improvement in cognition. (AR 101). This opinion was also consistent with Dr. Davis's September 2017 consultative examination where Plaintiff was noted to have average recent memory but poor long-term memory; and Dr. Williamson's affirmance of Dr. Rosenfeld's findings, as Dr. Williamson's opinions, too, were found persuasive. (AR 138 – 139).

Plaintiff makes the further claim that the ALJ's Decision was not based on substantial evidence as the ALJ did not give sufficient weight to Plaintiff's limited activities of daily living. Plaintiff testified that he was disabled due, in part, to short-term memory issues and seizures. The cited records, however, support that Plaintiff had average short-term memory and that it was his long-term memory which posed significant issues. In addition, Plaintiff's testimony that he would space out for up to 30 minutes and not know how he got to a location is not corroborated in the medical records which indicate only that Plaintiff had "staring spells" (Dr. Jankowska at AR 51) and would space out for 30 seconds to several minutes 3–4 times per week (Dr. Watt at AR 44).

Plaintiff takes issue with the ALJ's findings that he could prepare meals, pay bills, shop, and play games, asserting this was not adequately supported by the record where Plaintiff testified that he was afraid to use the stove, as he might forget to turn it off; and often ate only once daily, making sandwiches, frozen dinners, and "microwave stuff." Plaintiff also testified to having difficulty with paying bills, indicating that he had these on automatic payment. In

15

addition, while he testified to playing games, these were merely exercises meant to improve his memory.

When addressing Plaintiff's activities of daily living, the ALJ noted that Plaintiff was able to live on his own, appeared pleasant, and well-kempt. While Plaintiff testified that he was unable to stand for more than 20 minutes at a time, he did not use a cane or walker. She found Plaintiff's testimony as to short-term memory problems to be contradicted by the record. In addition, while Plaintiff claimed to have difficulty paying bills, he had scored in the "average" range for basic math skills. The ALJ found "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant." (AR 137). She also noted Plaintiff's activity level documented in the medical records which revealed he had injured his arm while throwing a football, was able to fish several times per week, and that he complained of pain after driving for a long time, mowing, and doing "a lot of work."

In evaluating a claimant's credibility, the ALJ is to consider "the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). It is clear that the ALJ reviewed the intensity and persistence of Plaintiff's symptoms in relation to his daily activities but ultimately determined that he was not as limited as he represented, particularly as to his claims of deficiencies in recent memory.

Plaintiff asserts, further, that the ALJ did not take proper notice of the VE's responses to one of the hypotheticals she had posed. The ALJ asked whether an individual would remain employed if off-task more frequent frequently than 20% of the day, absent more than two days a month, or if consistently taking breaks more often than every two hours. (AR 81–82). Plaintiff's

counsel additionally asked whether "employers would care whether someone lost say a half an hour or 20 minutes of their work time because they're (sic) brain sort of just went blank, would they mind that?" The VE responded in the negative to these questions, something which Plaintiff cites as evidence that he is unemployable. (AR 83).

The ALJ's questioning of VE Gustafson does not establish that she believed Plaintiff would be off-task, absent, or consistently need breaks more than every two hours. This is clear as the ALJ's Decision did not document such findings and, as she did not rely on these limitations which were unsupported in the record, she was not required to address them in her Decision. *See Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 948 (N.D. Ind. 2012); *Latkowski v. Barnhart*, 267 F. Supp. 2d 891, 904–05 (N.D. Ill. 2003), *aff'd,* 93 Fed. Appx. 963 (7th Cir. 2004) (The ALJ "was not required to discuss the VE's answers to a hypothetical based on facts he did not credit.")

Here, the ALJ identified substantial evidence in support of her Decision and built a logical analytical bridge from the evidence to her conclusions. If reasonable minds can differ as to whether a plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). Plaintiff essentially asks the Court to reweigh the evidence, something which it must not do.

## CONCLUSION

For the reasons asserted herein, the Court finds the ALJ's conclusions were reasonable and the ALJ supported her decision with substantial evidence. Accordingly, Plaintiff's motion for summary judgment (Doc. 14) is DENIED; Defendant's Motion for Summary Affirmance (Doc. 16) is GRANTED. The Commissioner's decision to deny benefits is AFFIRMED. The Clerk is directed to close the case.

Signed on this 1st day of April, 2022.

                                                    s/James E. Shadid
                                                   JAMES E. SHADID
                                     UNITED STATES DISTRICT JUDGE